## NICHOLS and another *against* RUMMEL and WIFE.

IN ERROR.

One of the heirs of a decedent, who died intestate, petitioned the Orphans' Court for an inquest on his real estate, describing it as "containing two hundred and twenty seven acres more or less with a grist mill, and several other buildings thereon erected," upon the writ issued thereon the inquest found that it could not be divided, and valued the same at thirty four dollars and seventy-five cents per acre, "amounting in the whole to seven thousand eight hundred and eightyeight dollars twenty-five cents," which was confirmed by the court, and another heir took the same and entered into a recognizance to the heirs. Suit was brought upon this recognizance by one of them, in which it was admitted that there was a deficiency of twenty acres and sixty-three perches, and that it had been agreed by some of the parties, not including the plaintiff, at the time of the inquisition, that the land should be surveyed before the return and acceptance by the heir; but that this was not done. *Held,* that the defendant was not entitled to any deduction from the recognizance on account of this deficiency. By the decree of the Orphans' Court, confirming the land to the heir, he became invested with the title to it, and the whole proceeding, which before was progressive and executory, was thereby closed and consummated.

ERROR to the Common Pleas of *Franklin* county.

The case below was at the suit of *John Rummel* and *Hetty* his wife late *Hetty Nichols* against *Mathias Nichols* and *Henry Funk,* with notice to *John Singer, terre tenant,* upon a recognizance in the Orphans' Court of *Franklin* County, in which the following special verdict was found by the jury:

"The defendants entered into the recognizance in the Orphans' Court, on which this suit is brought according to the petition, inquisition and record. That all the money has been paid on said recognizance, except fifty one dollars, nineteen and a half cents, on account of an alleged deficiency of the land. That the real quantity of the said land is two hundred and six acres and ninety-seven perches, and there is a deficiency of twenty acres and sixty-three perches, of said land; and that it was agreed by some of the parties, not including the plaintiff, at the time of the inquisition, that the land should be surveyed before the return and acceptance of the land; which was not done; and that no survey had been before made.

If the court shall be of opinion that the defendant is entitled to a credit for the deficiency, then we find for the defendants; but if the court shall be of opinion that the defendants are not entitled to such credit, then we find for plaintiffs fifty-one dollars nineteen and a half cents interest from 26th December, 1826."

By the proceedings in the Orphans' Court, made part of this verdict, it appeared that *John Nichols* one of the sons, and heirs of *William Nichols,* deceased, had presented to that court a petition for an inquest on the real estate of the decedent, in which he de-

Nichols *v.* Rummel.

scribed that estate, as containing "two hundred and twenty-seven acres more or less, with a grist mill and several other buildings thereon erected." It was not described in the inquisition in any way but by a reference to the writ, which pursued the petition; and the inquest found that it could not be divided, and therefore "valued and appraised the same undivided, at the sum of thirty-four dollars and seventy-five cents per acre, amounting in the whole to seven thousand eight hundred and eighty-eight dollars, and twenty-five cents." *Mathias Nichols* the plaintiff in error, took the real estate at the appraisement, and entered into the recognizance for the purchase money, which was the foundation of this suit. The court of Common Pleas gave judgment on the verdict for the plaintiffs, and in this error was assigned here.

*Findlay* and *M'Culloh* for the plaintiff in error.

As the plaintiff below had received his full share and proportion of the estate, he, under the act of 1794, was barred. There is no difference between a recognizance taken in the Orphans' Court to secure to heirs their proportions of the value of real estate, taken by one of them, and a bond or mortgage given for the same. The recognizance forms no part of the decree of the Court. The case was not one of a contract executed but executory. Taking the recognizance does not close the contract: until the money is paid, which it is taken to secure, it is in *fieri*, and is subject to the equitable defence which existed here. *Bailey* v. *Snyder*, 13 *Serg. & Rawle*, 160.

The Court declined hearing *Denny* and *Crawford* of counsel for the defendant in error.

The opinion of the court was delivered by

KENNEDY, J—In the case of *Hagerty* v. *Fager*, for the use of *Wilson*, decided by this court at the last *Sunbury* Term, 2 *Penn. Rep.* 533, in an action of debt brought upon a bond given for part of the purchase money of a tract of land, in pursuance of articles of agreement which had been made between the parties for the sale of a tract of land described as containing one hundred and seventy-one acres, for which a certain sum per acre was to be paid, bonds to be given for the payment of the aggregate in annual instalments, and at the same time a deed of conveyance to be executed by the vendor to the vendee, and without any survey of the land being made, the parties afterwards met, when the purchaser gave his bonds to the seller for the payment of the purchase money, the amount of which was fixed according to the rate per acre, and the estimated quantity mentioned int he articles of agreement, and a deed of conveyance, describing the land as containing one hundred

Nichols *v.* Rummel.

and seventy one acres, made by the vendor and accepted by the vendee; it was held, that the giving of the bonds and the acceptance of the deed of conveyance, were a consummation of the contract, and a discharge of the articles of agreement; and that the parties were thereby concluded; so that the defendant in the court below could not claim a deduction from his bond, on account of eleven acres deficiency in the land, which had been ascertained by a survey made sometime after the giving of the bonds, and the acceptance of the deed of conveyance. That the giving and acceptance of the bonds and the deed by the parties, might fairly be considered *per se,* evidence of an agreement made between them to waive the stipulation contained in the articles of agreement to pay by the acre, and instead thereof to make the estimated quantity the basis of their settlement, and final arrangement, and that each had agreed to take his chance, let the land contain more or less.

This principle is not only sustained by the decision in *Hagerty* and *Fagen,* and the authorities there referred to, but also by considerations of expediency, and sound policy, which require that there should be an end to litigation, after contracts have been closed, and fully executed, and that they shall not be ripped open again at the pleasure of either party, and be made the subject of strife between them.

This rule, that the giving and accepting the bonds and the deed of conveyance, concludes the parties, is applicable to the case now before the court and decisive of it.

*Mathias Nichols* was well acquainted with the metes and bounds of the land, it having been the seat of the residence of his father and family, including himself; and in the petition to the Orphans' Court for a partition or valuation of it, presented by his brother John, it was described as containing two hundred and twenty-seven acres more or less, with a messuage, grist-mill, and several other buildings thereon. The inquest, in their report, after stating that the land could not be parted and divided, &c. say, that they "have valued and appraised the same undivided, at the sum of thirty-four dollars and seventy-five cents per acre, amounting in the whole to seven thousand eight hundred and eighty-eight dollars and twenty five cents," which was approved of by the Orphans' Court on the 26th of December, 1828; the month following the date of the inquisition. At this time *Mathias Nichols* appeared in the same court and made his election to take the land at this valuation, and offered *Henry Funk,* the other plaintiff in error as his security. The court approved of the surety offered and decreed the land to *Mathias Nichols,* who thereupon entered into the recognizance upon which this suit is founded, with *Henry Funk* as his surety in the

Nichols *v.* Rummel.

sum of seven thousand eight hundred and twenty-eight dollars, and twenty-five cents, the precise amount of the valuation, after deducting the costs, conditioned for the payment of the interest annually on one third thereof to the widow during her natural life, and to each of the other heirs of the intestate, his or her one ninth part and proper proportion of the valuation after deducting the costs. Although it is reasonable to suppose, that the inquest may have made the number two hundred and twenty-seven acres, that is, the estimated quantity, in part the basis of their valuation, yet it cannot be supposed that they overlooked the *water power*, and the improvments on the land, consisting of a *dwelling house*, *grist-mill, and other buildings*, which in some instances might be the most valuable part of the whole. They, no doubt, looking at all these things, considered the whole worth, on an average, thirty four dollars and seventy-five cents per acre. With all these advantages and improvements upon one hundred acres only, it is impossible to say what the inquest might have judged the land worth per acre. They might have thought it worth seventy-eight dollars per acre: or if there had been three hundred acres of it, they might have fixed the average price per acre, at twenty-six dollars and thirty cents, which would not have varied the result materially from the aggregate valuation set upon the whole by them. In short, it is impossible to determine from their report, what proportion of the seven thousand eight hundred and eighty-eight dollars and twenty-five cents, was allowed by them on account of the *water power and the improvements*, and how much of it again for and in respect of the quantity of land and its quality. The inquest, it is clear, never intended by th eir report, that their valuation should be graduated, or made a measure for the valuation of any greater, or less number of acres, within the same metes and bounds to he ascertained by a survey to be subsequently made of the land, because they have made no provision for a survey to be made, but on the contrary, have fixed the whole value by the estimated quantity.

It however appears, that at the time of taking the inquisition, the plaintiff in error *Mathias·Nichols*, and some of the other heirs, but *Hetty*, the wife of the defendant in error was not one of them, agreed that a survey should be made of the land beforethe return of and acceptance of it. If this had been done and the deficiency of twenty acres had been ascertained, the inquest might have charged and regulated the valuation, so as fairly in their judgment to have met it. But instead of any such survey being made, a return of the inquisition took place without it. It was approved of by the court, and *Mathias Nichols* agreed to, and did take the land at the valuation reported upon the estimated quantity. And to pay this sum for it, he gave his recognizance with surety. No

(Nichols *v.* Rummel.)

objection appears to have been made to his doing so, by any of the other heirs. Finally, the land is decreed to him by the Orphans' Court. Thus he became invested with the title to it; and the whole proceeding which before was progressive and of an executory character, was closed and consummated. From all these things having been done as they were, is it not fairly, nay necessarily to be inferred, in the absence of all testimony to the contrary, that the parties finally agreed to settle and close the matter upon the basis of the valuation reported by the inquest and the estimated quantity, and to take their chance if it be more or less? If this were not so, why did the other heirs let *Mathias Nicholas* take the land and give his recognizance for theamount of the valuation reported by the inquest only? Because if the land upon a survey being made of it, had been found to contain more than the two hundred and twenty-seven acres, they had no security for the surplus by the recognizance, or any other agreement of *Mathias* or his surety. Beside, by the decree of the Orphans' Court, granting the land to *Mathias,* he became invested with the title to it, and was put into the possession of it; and although he might have surveyed it, and if, he found it contained more, have concealed it, yet the others had no right to make a survey, for they would have been trespassers if they had attempted to enter upon the land for that purpose without his consent. It is unreasonable then to suppose, or to presume, that it could ever have been intended to give to *Mathias* all these advantages, to put every thing in his power without any risk whatever on his part. I consider him fairly bound to pay according to the terms of his recognizance, and that the judgment of the court below ought to be affirmed.

Judgment affirmed.